**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

AMIRA SAMI SALEM,

                    Petitioner,                              Case Number: 03-74315

v.                                                           HON. BERNARD A. FRIEDMAN

J. YUKINS,

                    Respondent.

_____/

## OPINION AND ORDER CONDITIONALLY GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS

### I.  Introduction

Petitioner Amira Sami Salem, through counsel, has filed a petition for a writ of

habeas corpus.  Petitioner is currently incarcerated at the Huron Valley Womens Complex

in Ypsilanti, Michigan, pursuant to convictions for delivery of between 225 and 650

grams of heroin and conspiracy to deliver between 225 and 650 grams of heroin.  The

Court concludes that Petitioner was denied her Sixth Amendment right to a public trial

when the trial court closed her entrapment hearing to the public.  The Court, therefore,

conditionally grants a writ of habeas corpus.

### II.  Background

Petitioner's convictions arise out of the sale of 250 grams of heroin to undercover

Clinton Township police sergeant Jim Hurley on March 7, 1995.  Sergeant Hurley

testified that, on that date, while working undercover, he called Petitioner and informed

her that he wanted to purchase heroin from her, but that he would like to obtain a sample first to test the quality.  Petitioner advised Hurley that her co-defendant, Bettina Schreck, was picking up the sample.  At approximately 7:00 p.m., Petitioner and Schreck met Hurley in a restaurant parking lot in Warren, Michigan.  Petitioner entered Hurley's vehicle and gave him the heroin sample.  Hurley told Petitioner he would call her after he tested the heroin.  Later that night, Hurley telephoned Petitioner to tell her that he was satisfied with the sample and wanted to continue with the full heroin purchase.  Hurley testified that Petitioner told him that she could provide him with 250 grams of heroin for $35,000.  They arranged to meet at a restaurant parking lot in Clinton Township for the sale.

At approximately 9:10 p.m., Petitioner and Schreck arrived at the parking lot, where Hurley and a number of back-up officers, were waiting.  Hurley testified that Schreck exited the vehicle, which was driven by Petitioner, entered Hurley's vehicle, and delivered to Hurley a bag containing a substance later determined to be 249.66 grams of heroin.  The back-up officers then arrested Petitioner and Schreck.

### III.  Procedural History

Following a jury trial in Macomb County Circuit Court, Petitioner was convicted of delivery of between 225 and 650 grams of heroin, and conspiracy to deliver between 225 and 650 grams of heroin.  On July 31, 1997, Petitioner was sentenced to twenty to thirty years imprisonment for each of the convictions, to be served consecutively.  Petitioner was tried jointly before a single jury with Bettina Schreck.

2

Prior to trial, Petitioner filed a motion to dismiss on the ground that she had been entrapped. After an entrapment hearing, the trial court denied the motion.

After her conviction, Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.  Did defendant receive ineffective assistance of counsel such that she is entitled to a new trial?

   A.  Defense counsel's decision to elicit meetings between defendant and James Hursley that led to the heroin sale in this case opened the door to the only incriminating evidence against defendant for conspiracy to deliver between 225 and 650 grams of heroin.

   B.  Defense counsel's decision to ask defendant whether she had ever been a drug addict opened the door to evidence of a prior German drug conviction that damaged her credibility.

   C.  Defense counsel's decision to invoke the defense of jury nullification cannot be deemed sound trial strategy.

II.  Was the trial court's decision to permit the prosecution to ask defendant about her prior German drug conviction an abuse of discretion?

III.  The cumulative effect of the errors at defendant's trial were so prejudicial as to deny her a fair trial.

IV.  Was the trial court's ruling that there was no entrapment clearly erroneous?

V.  At sentencing, defendant asked the court to deviate below the presumptive mandatory minimum sentence. The trial court declined. Was this ruling clearly erroneous and an abuse of discretion?

Petitioner also filed a pro per supplemental brief, presenting the following claim:

Did the police officials abuse their authority in obtaining the evidence by overstepping their legal boundaries or withholding evidence?

The Michigan Court of Appeals remanded the case to the trial court for a new

3

entrapment hearing at which the defense would be given an opportunity to confront and cross-examine informant Joe Issa. People v. Salem, No. 205746 (Mich. Ct. App. Jan. 12, 2001) ("Salem I"). The Michigan Court of Appeals retained jurisdiction over the matter.

On remand, the trial court conducted another entrapment hearing, during which Petitioner was permitted to cross-examine informant Joe Issa. Following the entrapment hearing, the trial court issued an opinion and order denying Petitioner's motion to dismiss on the basis of entrapment. People v. Salem, No. 1995-1195 (Macomb County Circuit Court June 15, 2001).

The matter was then returned to the Michigan Court of Appeals. Petitioner filed a supplemental brief in which she claimed that she was denied her constitutional right to a public trial when the trial court closed the entrapment hearing to the public without holding a hearing. The Michigan Court of Appeals affirmed Petitioner's convictions. People v. Salem, No. 205746 (Mich. Ct. App. Sept. 7, 2001) ("Salem II").

Petitioner filed a delayed application for leave to appeal the Michigan Court of Appeals' decision in the Michigan Supreme Court. The Michigan Supreme Court denied leave to appeal. People v. Salem, No. 120265 (Mich. July 29, 2002).

Petitioner then filed the pending petition for a writ of habeas corpus, through counsel, presenting the following claims:

I.    Petitioner was denied her right to a public trial when the trial court closed the courtroom to the public while the confidential informant, Joe Issa, testified during her entrapment hearing after remand.

II.   The record establishes that Petitioner was entrapped as a matter of law and

4

was therefore deprived of liberty without due process of law.

III.    Ineffective assistance of counsel.

## IV.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts

reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law,
>        as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>        determination of the facts in light of the evidence presented in
>        the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication

of a petitioner's claims unless the state court's decision was contrary to or involved an

unreasonable application of clearly established federal law.  Franklin v. Francis, 144 F.3d

429 (6th Cir. 1998).  Additionally, this court must presume the correctness of state court

factual determinations.  28 U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d

167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they

---

[1]  28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct.

5

are clearly erroneous").

The United States Supreme Court has explained the proper application of the

"contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's]
> clearly established precedent if the state court applies a rule that contradicts
> the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts that are
> materially indistinguishable from a decision of this Court and nevertheless
> arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United

States Supreme Court held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause when "a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409.

The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry
> should ask whether the state court's application of clearly established
> federal law was objectively unreasonable. . .

> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable
> application" clause, then, a federal habeas court may not issue the writ
> simply because that court concludes in its independent judgment that the
> relevant state-court decision applied clearly established federal law
> erroneously or incorrectly.  Rather, that application must also be
> unreasonable.

Id. at 410-11.

6

## V.  Analysis

## A.  Right to a Public Trial

Petitioner alleges that her Sixth Amendment right to a public trial was violated when the trial court closed the entrapment hearing to the public.  The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  The right is applicable to the states through the Fourteenth Amendment.  Duncan v. Louisiana, 391 U.S. 145, 148-49 (1968).

"The central aim of a criminal proceeding must be to try the accused fairly." Waller v. Georgia, 467 U.S. 39, 46 (1984).  The public-trial guarantee was created to further that aim.  Id., *citing* Gannett Co. V. DePasquale, 443 U.S. 368, 380 (1979).  A public trial helps to ensure that judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury.  Id.  The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless error analysis.  Id. at 49-50, n.9.

A closure does not violate the Sixth Amendment where: (1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced by an open courtroom; (2) the party seeking closure demonstrates that the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure.  Id. at 48.

Before trial, Petitioner filed a motion to dismiss on the ground that she had been

7

entrapped, alleging that Joe Issa, an allegedly confidential government informant, encouraged her to arrange the drug sale in order to assist co-defendant Schreck with her drug debts. The trial court conducted an entrapment hearing on multiple dates. The prosecutor claimed the informant's privilege in response to the defendants' attempts to obtain the real identity, address and testimony of Joe Issa. Following an in-camera examination of Issa, the transcript of which was sealed, the trial court concluded that Issa's testimony would not be helpful to the defendants and he, therefore, would not be produced. Issa was not subject to cross-examination. The trial court concluded that Petitioner had not been entrapped.

On direct review, the Michigan Court of Appeals held that Petitioner was deprived of her right of confrontation when the trial court did not allow her to cross-examine Issa. The court of appeals remanded the matter to the trial court for a new entrapment hearing at which Petitioner would be provided an opportunity to confront and cross-examine Issa. The Michigan Court of Appeals directed that, "[t]he court may enter an appropriate protective order, but may not impinge on defendants' right to confront and cross-examine Issa concerning his credibility and his involvement in the matter at issue." Salem I, slip op. at 11.

On remand, the trial court conducted an entrapment hearing at which Petitioner and her co-defendant were afforded the opportunity to confront and cross-examine Issa. The trial court closed the entrapment hearing to the public purportedly so that the confidential informant's true identity would not be revealed in open court. However, it

8

was revealed during the entrapment hearing that Joe Issa was, in fact, the informant's true identity. Petitioner argues that the closure violated her right to a public trial.

Respondent argues that this claim is procedurally defaulted. The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." Rust, 17 F.3d at 162; Murray v. Carrier, 477 U.S. 478, 496 (1986).

A state procedural default is not an "independent and adequate state ground" barring subsequent federal review unless the state rule was "firmly established and

regularly followed" at the time it was applied.  Ford v. Georgia, 498 U.S. 411, 423-24 (1991).  Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim.  Coleman, 501 U.S. at 729-30.  "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar."  Simpson, 94 F.3d at 202.

If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition.  Rust, 17 F.3d at 161.  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

This Court begins its analysis of whether Petitioner's claim is procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claim. See Coleman, 501 U.S. at 729-30.  The last state court to issue a reasoned opinion addressing the allegedly procedurally defaulted claim was the Michigan Court of

10

Appeals.  The Michigan Court of Appeals noted that counsel lodged the following objection to the court's decision to close the entrapment hearing:

> Robin Lerg:  I did want to place an objection on the record but recognize the Court of Appeals direction that the Court may enter an appropriate protective order.
>
> The Court: So noted.

Salem II, slip op. at 3.

In its order remanding the case to the trial court for an entrapment hearing, the Michigan Court of Appeals had stated that the trial court "may enter an appropriate protective order, but may not impinge on the defendants' right to confront and cross-examine Issa concerning his credibility and his involvement in the matter at issue." Salem I, slip op. at 11.  The Court of Appeals noted that the trial court, in closing the courtroom to the public, misinterpreted the court's reference to "an appropriate protective order" as having been aimed at keeping the informant's identity and testimony out of the public domain.  The court's intent instead was to "permit the trial court to restrict defendants' cross-examination of Issa to matters related to the entrapment defense." Salem II, slip op. at 4.  Nevertheless, the Court of Appeals held that the claim that Petitioner was deprived of her right to a public trial was not preserved for review, stating, in pertinent part:

> We conclude . . . that while Salem's counsel stated the objection quoted above, the issue was not adequately preserved.  We have no record of the discussions held in chambers.  It has not been established that Salem cited Waller, supra, to the court, or that she argued that closing the courtroom was not an appropriate protective order because other more narrowly-drawn

11

alternatives could adequately protect the prosecution's and witness'
interests. We have only the statement of Salem's counsel that she did want
to place an objection on the record but recognized the Court of Appeals
direction that the trial court may enter an appropriate protective order. This
does not adequately convey the argument that closure is not an appropriate
protective order under the circumstances, and that a different protective
order would be more appropriate. Further, when it became clear that Issa's
real identity was Joseph Issa, Salem did not renew her objection.

Salem II, slip op. at 4.

The Court rejects Respondent's argument that this issue is procedurally defaulted.

First, the Michigan Court of Appeals unreasonably applied clearly established Supreme

Court precedent in finding that Petitioner's counsel did not adequately preserve the issue

for appellate review. The Michigan Court of Appeals held that the issue was not

adequately preserved because there was no record of the in-chambers discussion, no

evidence that counsel cited Waller, or that defense counsel argued that more narrowly-

drawn alternatives could adequately protect the prosecution's and witness's interests. Id.

The Michigan Court of Appeals placed the burden on Petitioner's counsel to demonstrate

the closure was inappropriate. This is contrary to the rule set forth in Waller, which

places on the party seeking closure the burden of demonstrating an overriding interest that

is likely to be prejudiced by an open courtroom and that the closure sought is no broader

than necessary to secure that interest. Waller, 467 U.S. at 48. Once the party seeking

closure makes the required showings, the trial court must consider reasonable alternatives

to closing the proceeding and must make findings adequate to support the closure. Id.

Accord Judd v. Haley, 250 F.3d 1308, 1317 (11th Cir. 2001) (holding that the absence of

evidence that the <u>Waller</u> steps were satisfied "cuts in favor of the party *objecting* to closure of the courtroom, not in favor of those who sought the closure") (emphasis in original).

Thus, the Michigan Court of Appeals' decision that counsel failed to preserve this issue was based upon the incorrect belief that <u>Waller</u> required Petitioner's attorney to advance specific objections and propose alternative, less restrictive, means of protecting the informant's identity. In addition, once Petitioner's counsel lodged her objection, <u>Waller</u> did not require her to renew it as Joe Issa's testimony continued and it became evident that Joe Issa was the informant's real name. Because the state court based its finding of procedural default on a fundamental misunderstanding of <u>Waller</u>, the Court finds that the claim is not procedurally defaulted.

Even if the state court's misunderstanding of <u>Waller</u> did not preclude a finding of procedural default, the Court finds that the claim, nevertheless, is not procedurally defaulted because the Court of Appeals' decision was not based upon a state procedural rule which was firmly established and regularly followed at the time it was imposed. Petitioner argues that, where an attorney failed to lodge a contemporaneous objection in the trial court, Michigan courts regularly addressed the merits of a claim on appellate review if the claim involved a "significant constitutional question." <u>People v. Jones</u>, (*On Rehearing*), 201 Mich. App. 449, 452 (1993). The Court agrees.

While the contemporaneous objection rule is fairly established as a preferred procedure and appears to be regularly followed as to some claims, Michigan courts

13

regularly waived contemporaneous objection defaults at the time of Petitioner's conviction when the issue was perceived to concern "constitutional due process rights."  *See*, *e.g.,* People v. Crear, 242 Mich. App. 158, 166 (Mich. Ct. App.  2000); *see also* People v. Wilson, 230 Mich. App. 590, 593; People v. Johnson, 215 Mich. App. 658, 669 (Mich. Ct. App. 1996); Watson v. Watson, 204 Mich. App. 318, 319 (Mich. Ct. App. 1994).  State procedural requirements which are not regularly followed cannot prevent federal review of alleged constitutional violations.  Barr v. City of Columbia, 378 U.S. 146, 148 (1964).  *Accord* James v. Kentucky, 466 U.S. 341, 348-49 (1984).  "A rule of exception which itself depends on the perceived merits of the federal claim cannot fairly be considered 'adequate and independent' of federal law so as to preclude federal habeas review."  Griffin v. Berghuis, 298 F. Supp. 2d 663, 672 (E.D. Mich. 2004), *quoting* Bentley, 239 F. Supp. 2d at 694.

Petitioner's claim that her right to a public trial was violated unquestionably presented a significant constitutional question.  Michigan courts regularly waived contemporaneous objection defaults in such circumstances.  Accordingly, the Court finds that the state court's decision not to address this claim was not based upon a "firmly established and regularly followed" state procedural rule and, therefore, that the claim is not procedurally defaulted.  Ford, 498 U.S. at 423-24.  *Cf.* Walton v. Briley, 361 F.3d 431, 434 (7th Cir. 2004) (holding that habeas petitioner had not waived right to a public trial by failing to object at trial because a right to a public trial is a fundamental trial right which may be relinquished only upon a showing that defendant knowingly and voluntarily

14

waived such a right).

Having concluded that this claim is not procedurally defaulted, the Court now must consider the merits of the claim. It is undisputed that, on remand, the entrapment hearing was closed to the public. The trial court failed even to consider the <u>Waller</u> four-part test to determine if the closure was justified. Similarly, the Michigan Court of Appeals failed to consider whether the four-part test had been satisfied. The Court finds that none of the four <u>Waller</u> prongs were satisfied. First, the state failed to advance an overriding interest justifying the closure of the courtroom in this case. The basis of the closure, keeping secret the true identity of the informant Joe Issa, proved to be baseless as Joe Issa was the informant's true identity. The second <u>Waller</u> prong, that the closure be no broader than necessary to protect the overriding interest, was not satisfied because no such overriding interest was shown. Third, there is no evidence that the trial court considered any other reasonable alternatives to closing the courtroom. Indeed, had the trial court endeavored to determine whether other reasonable alternatives were available, the trial court likely would have discovered that any closure was unnecessary because protecting Joe Issa's "true" identity was not a concern. Finally, the trial court failed to make any findings adequate to support closure of the courtroom. Petitioner's right to a public trial, therefore, was violated.

The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless error analysis. <u>Waller</u>, 467 U.S. at 49-50, n.9. *See also* <u>Carson v. Fischer</u>, 421 F.3d 83, 94 (2d 2005); <u>Judd</u>, 250 F.3d at 1314. The question remaining for

15

the Court is the appropriate remedy for Petitioner.

A federal court has "broad discretion in conditioning a judgment granting habeas corpus relief," and may dispose of habeas corpus cases "'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 (1987), *quoting* 28 U.S.C. § 2243.  In Waller, after finding that the defendant's right to a public trial had been violated by the closed suppression hearing, the Supreme Court ordered a new, public suppression hearing.  If the new suppression hearing yielded the same results as the previous, closed suppression hearing, the defendant would not receive a new trial.  The Court reasoned that this result avoided awarding defendant the windfall of a new trial if essentially the same evidence was suppressed after the new suppression hearing.  Waller, 467 U.S. at 50.  *See also* U.S. v. Canady, 126 F.3d 352, 364 (2d Cir. 1997) (holding appropriate remedy for failure to publicly announce verdict was not new trial, but remand for public announcement of verdict).  Although Waller is distinguishable from the case at bar in that it involved a direct appeal from a criminal conviction, rather than habeas corpus review, the underlying reasoning is equally applicable.  Awarding Petitioner a new trial in this case might result in an unjustified windfall for her because a public entrapment hearing may not have yielded a different result than that obtained after the closed entrapment hearing.  The Court, therefore, shall grant a conditional writ of habeas corpus.

Within ninety days from the date of this opinion, the trial court shall conduct a new, public entrapment hearing.  If the new entrapment hearing yields the same result as the previous entrapment hearing, Petitioner need not be afforded a new trial.  *See* Waller, 467

16

U.S. at 49-50.  If, however, the public entrapment hearing yields a different result, Petitioner shall be afforded a new trial.

### B.  Alleged Entrapment

The Court has determined that a new entrapment hearing is necessary.  Based upon this conclusion and the possibility that additional or different testimony relevant to the entrapment claim may be adduced at the hearing, the Court declines to address this claim at this time.

### C.  Alleged Ineffective Assistance of Counsel

Finally, Petitioner claims that her attorney was ineffective in three respects: (i) eliciting testimony which supported the conspiracy charge; (ii) eliciting testimony which allowed the prosecutor to introduce evidence regarding Petitioner's prior drug conviction; and (iii) arguing jury nullification and entrapment when no corresponding jury instruction was given.

To establish that she received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." Id. at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" Tinsley v. Million, 399 F.3d 796, 802 (6th Cir. 2005), quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

First, Petitioner argues that her trial attorney was ineffective because his decision to elicit testimony regarding communications that took place between Petitioner and Hurley

before March 7, 1995 opened the door to the only incriminating evidence against her on the conspiracy charge.  The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, rejected Petitioner's argument that the only incriminating evidence of conspiracy against her was elicited by her trial counsel from Hurley on cross-examination.  The state court found that, prior to defense counsel's cross-examination, there was "ample testimony from which the jury could have concluded that defendants had the specific intent to combine to deliver heroin to Hurley."  <u>Salem II</u>, slip op. 9.  The Michigan Court of Appeals found that the testimony elicited prior to defense counsel's cross-examination of Hurley was sufficient to sustain a conspiracy conviction. <u>Id.</u>  Petitioner has failed to show that the state court's factual findings were clearly erroneous, nor has she shown that the finding that sufficient evidence was presented was contrary to or an unreasonable application of Supreme Court precedent.  Thus, because sufficient evidence was presented prior to counsel's cross-examination of Hurley to sustain the conviction, Petitioner's attorney was not ineffective in eliciting testimony regarding the conspiracy.

Second, Petitioner claims that her trial counsel was ineffective in asking her whether she had ever been a drug addict, which opened the door to questions regarding her prior drug conviction in Germany.  The Michigan Court of Appeals concluded that, even if her attorney erred in asking this question, in light of the overwhelming evidence of Petitioner's guilt, Petitioner could not establish that she was prejudiced by the error.  This Court finds that the state court's decision was not contrary to or an unreasonable

19

application of Supreme Court precedent.

Finally, Petitioner claims that her attorney was ineffective in presenting a jury nullification argument. Petitioner argues that because a jury nullification instruction was not given by the trial court, counsel's attempt to argue entrapment to the jury amounted to an admission of Petitioner's guilt.

The Michigan Court of Appeals held that defense counsel was not ineffective, stating, in relevant part:

> Salem has not shown her trial counsel's choice of defense to be patently unreasonable or unsound. Both defendants in this joint trial voluntarily testified that they agreed to obtain heroin in order to pay off Schreck's drug debts to drug dealers and individuals who were threatening their lives if Schreck's debts remained unpaid. The police traced each step of the March 7, 1995, delivery to undercover officer Hurley and caught defendants "red-handed" in the act of delivery. Although the trial court previously rejected defendants' entrapment defense based on the acts of the alleged police informant, Joe Issa, and undercover officer Hurley, the trial court allowed trial counsel to pursue the entrapment argument before the jury in an attempt to obtain an acquittal. . . .
>
> * * *
>
> In light of the overwhelming evidence against Salem and Schreck and the lack of other defenses, we conclude that Salem's trial counsel's choice of a jury nullification argument constituted sound trial strategy. Salem argues that the error stems from the fact that the trial court had already rejected the entrapment defense. However, an attorney's representation is not ineffective per se if he argues an unavailable defense to the jury, *see* <u>People v. Henry</u>, 239 Mich. App. 140, 146-48; 607 N.W.2d 767 (1999), and the entrapment defense was presented in conjunction with the jury nullification defense, which clearly *was* permitted by the trial court. Jury nullification is the power to dispense mercy by nullifying the law and returning a verdict less than that required by the evidence. . . . The trial court expressly allowed Salem's trial counsel to argue for nullification. Under the circumstances, where the jury could have found the police conduct to be reprehensible if it believed defendants, the choice of a jury nullification argument was sound trial strategy.

20

Salem II, slip op. at 10.

Because, as the Michigan Court of Appeals noted, the evidence against Petitioner was overwhelming, trial counsel did not have a great deal of latitude in mounting a defense. Given Petitioner's own admissions and the mountain of additional evidence against her, counsel's decision to present a jury nullification argument was not outside the wide range of professionally competent assistance. Thus, the Court shall deny habeas relief on this claim.

## VI.  Conclusion

Petitioner was denied her Sixth Amendment right to a public trial when the trial court closed her entrapment hearing to the public. The Court, therefore, shall grant a conditional writ of habeas corpus. Within ninety days from the date of this opinion, the state trial court shall conduct a new, public entrapment hearing, which complies with the requirements of Waller v. Georgia, 467 U.S. 39 (1984). If the new entrapment hearing yields the same result as the previous entrapment hearing, Petitioner need not be afforded a new trial. If, however, the public entrapment hearing yields a different result, Petitioner shall be afforded a new trial. If the trial court fails to conduct an entrapment hearing or, if

necessary, fails to afford Petitioner a new trial, Petitioner may petition this Court for
issuance of an unconditional writ.

**SO ORDERED**.


        s/Bernard A. Friedman
        BERNARD A. FRIEDMAN
        CHIEF UNITED STATES DISTRICT JUDGE

Dated:  February 7, 2006